[No. F060147. Fifth Dist. Apr. 4, 2011.]

CYNTHIA A. NEWTON-ENLOE et al., Plaintiffs and Appellants, v. MARK HORTON, as Director, etc., et al., Defendants and Respondents.

COUNSEL

California Rural Legal Assistance, Inc., Kara E. Brodfuehrer, Phoebe S. Seaton and Cynthia L. Rice for Plaintiffs and Appellants.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Douglas M. Press, Assistant Attorney General, and Julie Weng-Gutierrez, Deputy Attorney General, for Defendants and Respondents.

OPINION

**WISEMAN, Acting P. J.**—Plaintiffs petitioned the trial court for an order compelling California's State Department of Public Health and its director (collectively the Department) to prepare and submit to the Legislature a safe drinking water plan (plan) as required in Health and Safety Code section 116355. The trial court denied the petition. We presume that, in doing so, the trial court concluded that the statutory requirement to prepare and submit the plan had been suspended. We disagree and reverse the judgment. The matter is remanded to enable the trial court to decide, in the first instance, whether the requirements of Code of Civil Procedure section 1085 have been met.

## *FACTUAL AND PROCEDURAL HISTORIES*

Plaintiffs are Cynthia A. Newton-Enloe and an organization called the A.G.U.A. Coalition.[1] Plaintiffs filed a verified petition for alternative writ of mandate and writ of mandate on November 17, 2009. They allege that Health and Safety Code section 116355 (section 116355) requires that the Department submit to the Legislature a plan every five years and that no such plan has been completed since 1995. Plaintiffs contend they are intended beneficiaries of the statutory mandate to prepare the plan because they reside or work in communities that are served by public water systems consisting of fewer than 10,000 service connections, and these communities have drinking water that contains contaminants referred to in section 116355. Their petition seeks a writ of mandate commanding the Department to prepare and submit to the Legislature a plan and also to submit to the court a detailed proposal for the completion of the plan, including parameters and a timeline.

---

[1] Another plaintiff in the writ petition, Juventino Gonzalez, was dismissed from this appeal at his own request. (Cal. Rules of Court, rule 8.244(c)(2).)

The Department filed an answer to the petition asserting several affirmative defenses. Among these was a claim that any mandate to prepare and submit a plan was suspended by the Legislature's decision to discontinue funding its preparation. The Department also filed an opposition to the petition, arguing that any statutory mandate was suspended because specific funding to prepare a plan had been eliminated in 1992 by Assembly Bill No. 3085 (1991–1992 Reg. Sess.) section 1 (Assembly Bill No. 3085). In reaching this conclusion, the Department relied on Government Code section 11098, which provides that any legislatively mandated publication (like the plan) is suspended "when funding . . . is discontinued in the Budget Act . . . ."

The Department offered declarations from (1) David Spath, Assistant Division Chief of the Drinking Water and Environmental Management Division (Division) from 1993 to 1995 and Chief of the Division from January 1996 to November 2005; (2) Rufus Howell, Acting Chief of the Division from November 2005 to November 2006 and Chief of the Division from November 2006 to February 2008; and (3) Gary H. Yamamoto, then current Chief of the Division.

Each declaration contained identically worded statements regarding the plan and the declarant's belief about the effect of Assembly Bill No. 3085 on the requirement to prepare a plan. A plan was prepared and submitted to the Legislature in or about January 1993. "Funding for preparation of the report had been provided by the Legislature but was discontinued by the Legislature in 1992 by AB [No.] 3085 and in the Budget Acts subsequently enacted by the Legislature." The declarants also identically stated, "It is my understanding that under Government Code Section 11098, because the Legislature discontinued the funding for the preparation of the report, any mandate to prepare the report was suspended." In addition, the Department took the position that the preparation and submission of the plan was not mandatory and, further, that plaintiffs did not have a beneficial interest in having one prepared.

Plaintiffs argued that the Department failed to demonstrate that Government Code section 11098 applied. They pointed out that the Department did not show that specific funding for the preparation of the plan was provided in any budget act prior to 1992 *or* that funding was discontinued after 1992. Plaintiffs also contended that the Department had a clear ministerial duty to prepare the plan; a lack of resources was not a defense to failing to perform a ministerial duty; and plaintiffs had a beneficial interest in the issuance of a writ.

On February 5, 2010, the trial court heard oral argument. In denying the petition, the court stated, "[Plaintiffs] failed to carry their burden of proof to relief under Code of Civil Procedure § 1085, especially in light of the declarations filed by defendants. The petition for writ of mandate is therefore denied."

## *DISCUSSION*

■ To obtain a writ, plaintiffs were required to show three elements: "Code of Civil Procedure section 1085, providing for writs of mandate, is available to compel public agencies to perform acts required by law. [Citation.] To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists (Code Civ. Proc., § 1086); (2) ' "a clear, present . . . ministerial duty on the part of the respondent" '; and (3) a correlative ' "clear, present and beneficial right in the petitioner to the performance of that duty." ' [Citations.] A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act. [Citation.]" (*People v. Picklesimer* (2010) 48 Cal.4th 330, 339–340 [106 Cal.Rptr.3d 239, 226 P.3d 348].)

The Department argued before the trial court that the statutory mandate to prepare and submit a plan was suspended by the Legislature's termination of funding. The court denied the petition, finding that "[plaintiffs] failed to carry their burden of proof to relief under Code of Civil Procedure § 1085, *especially in light of the declarations filed by defendants.*" (Italics added.) As we have already mentioned, the declarations filed by the Department were from three current and former division chiefs who stated that funding for the plan was discontinued by the Legislature and that their understanding was "any mandate to prepare the [plan] was suspended." The declarations did not address any other issues. For example, the division chiefs did not say anything about the possibility of speedy alternative remedies or whether plaintiffs had a beneficial interest in having a plan prepared and submitted. The declarations related only to the Department's claim that the statutory mandate was suspended. We assume the court agreed with that claim and denied the petition for that reason.

To determine whether the Legislature has suspended the requirement to prepare and submit a plan, we review de novo the trial court's implicit statutory interpretations. (*Kavanaugh v. West Sonoma County Union High*

*School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].) We conclude that the statutory mandate was not suspended.

## I. *Suspension of section 116355*

Section 116355, subdivision (a), provides: "Once every five years the department shall submit to the Legislature a comprehensive Safe Drinking Water Plan for California." Section 116355, subdivision (b), specifies information to be included in the plan, such as "[t]ypes and levels of contaminants found in public drinking water systems that have less than 10,000 service connections" and "[r]ecommendations for actions that could be taken by the Legislature, the department, and these systems to improve water quality." (§ 116355, subd. (b)(2).)

██  Our task in interpreting a statute is to " 'ascertain and effectuate legislative intent.' " (*People v. Trevino* (2001) 26 Cal.4th 237, 240 [109 Cal.Rptr.2d 567, 27 P.3d 283].) In doing so, "[w]e begin by considering the statute's words because they are generally the most reliable indicator of legislative intent," and we give the statutory language its usual, ordinary meaning. (*Id.* at p. 241.)

### A. *History of the plan requirement*

The crux of the Department's argument is that, notwithstanding the language of section 116355, their duty to prepare and submit a plan was suspended because the Legislature terminated funding in 1992. In examining this question, we begin with a brief history of section 116355 and its predecessor, Health and Safety Code former section 4022.

#### 1. *Original statutory requirement with fee provision*

The first statutory requirement to prepare and submit a plan was enacted in 1989. Health and Safety Code former section 4022, subdivision (a), created a one-time obligation: "On or before July 1, 1991, the department shall submit to the Legislature a comprehensive Safe Drinking Water Plan for California." (Former § 4022, subd. (a), added by Stats. 1989, ch. 823, § 29, p. 2712.) Like current section 116355, former section 4022 required the plan to include, among other things, "[t]ypes and levels of contaminants found in public drinking water systems which have less than 10,000 service connections" and "[r]ecommendations for actions which could be taken by the Legislature, the department, and these systems to improve water quality." (Former § 4022, subd. (b).) Former section 4022, subdivision (c), provided authorization for a one-time fee to cover the costs of preparing this plan:

"(1) The department may levy a one-time fee on public water systems which serve more than 500 service connections for the exclusive purpose of covering its costs in preparing the safe drinking water plan.

"(2) The fee shall be paid by water systems to the department at a rate of nine and fifteen one-hundredths cents ($0.0915) per service connection, up to a maximum amount of ten thousand dollars ($10,000)."

### 2. *Assembly Bill No. 3085 deletes obsolete fee provision*

In 1992, by Assembly Bill No. 3085, the Legislature amended Health and Safety Code former section 4022, deleting subdivision (c). From an Assembly committee report, it appears that the one-time fee provision was deleted as obsolete because the fee had "already been collected and recovered." (See Assem. Com. on Ways & Means, Rep. on Assem. Bill No. 3085 (1991–1992 Reg. Sess.) as amended Mar. 31, 1992.) The committee report also commented that a "draft plan has been prepared, but has not been approved or submitted to the Legislature for unexplained reasons." (*Ibid.*) Despite the passing of the deadline, amended Health and Safety Code former section 4022 continued to require the Department to submit a safe drinking water plan on or before July 1, 1991. (Former § 4022, as amended by Stats. 1992, ch. 1103, § 1, p. 5100.) In fact, a plan was submitted to the Legislature in 1993.

### 3. *Current statutory requirement*

In 1995, the Legislature renumbered Health and Safety Code former section 4022 as section 116355. (Former § 116355, added by Stats. 1995, ch. 415, § 6, p. 2576.) That statute continued to require the Department to submit a plan to the Legislature on or before July 1, 1991.[2] (Former § 116355, subd. (a).) Then, in 1996, the Legislature amended section 116355, deleting the requirement that a plan be submitted by July 1, 1991, and adopting the current language: "Once every five years the department shall submit to the Legislature a comprehensive Safe Drinking Water Plan for California." (§ 116355, subd. (a), added by Stats. 1996, ch. 755, § 4, p. 4026.)

### B. *The statutory mandate has not been suspended*

The Department contends that, in 1992, Assembly Bill No. 3085 permanently terminated funding for preparation of any safe drinking water plan. Therefore, the Department argues, Government Code section 11098 suspends

---

[2] The parties do not discuss why the Legislature renewed in 1995 a statutory requirement that was due in 1991 and completed in 1993. The changes to the code were intended to renumber and reorganize and "have only technical and nonsubstantive effect." (Stats. 1995, ch. 415, § 171, p. 3335.)

the mandate to prepare and submit a plan even though the Legislature enacted the current mandate after 1992.

### 1. *Government Code section 11098*

■ Government Code section 11098 provides: "Notwithstanding any other provision of law, when funding for any legislatively mandated publication is discontinued in the Budget Act, the statutory mandate for that publication shall be automatically suspended." The parties do not cite, and our research has not uncovered, any cases applying section 11098. To interpret the statute, we look to the overall scheme in which the statute is included. (*City of Brentwood v. Central Valley Regional Water Quality Control Bd.* (2004) 123 Cal.App.4th 714, 722 [20 Cal.Rptr.3d 322] [observing that court may consider "organization of the division, chapters, and articles is an aid to understanding its purpose"].)     ■     Here, Government Code section 11098 is part of an article titled "Distribution of State Publications." (Gov. Code, §§ 11094–11099.) In Government Code section 11094, subdivision (a), the Legislature explains that the intent of the article is "to reduce the excessive flow of unsolicited state agency reports," which are produced and distributed at "significant public expense" and then often shelved or destroyed by the recipients again "at significant public expense." "Publication" is not defined in Government Code section 11098, but section 11097 refers to "state publications" and defines them with reference to Government Code section 14902. (Gov. Code, § 11097.) Government Code section 14902 defines a "state publication" to include, among other things, any report issued by any department, commission, or other agency of the state.

Since the plan is a report prepared by a state agency, we assume it is a legislatively mandated publication for purposes of Government Code section 11098. For section 11098 to apply, there must be a showing that funding for the plan has been discontinued in a budget act. The Department did not offer evidence of any budget acts in which funding for the preparation of the Safe Drinking Water Plan expressly was discontinued. Plaintiffs argue that deletion of the fee provision does not invoke Government Code section 11098 because Assembly Bill No. 3085 (in which the fee was deleted) was not part of a budget act. The Department concedes that there is no express discontinuation of funding in any budget act but argues that this is "of no consequence because if the Legislature terminates funding through statutory amendment, then it follows that the Legislature will not make an appropriation in the Budget Act."

### 2. *Analysis*

■ Assuming, but not deciding, that Government Code section 11098 does apply to discontinuation of funding found outside budget acts, the next

question is whether Assembly Bill No. 3085 means that the current statutory mandate stands suspended today. Again, the Department's claim is that, in 1992, through Assembly Bill No. 3085, the Legislature discontinued funding for the statutory mandate at issue (submission of a plan to the Legislature once every five years), even though this mandate was not created until 1996. We do not see how, by deleting in 1992 a one-time fee that had already served to cover the costs of a one-time plan that had already been drafted, the Legislature intended to discontinue funding prospectively for the preparation and submission of safe drinking water plans that it was going to require four years later. Nor does it seem likely that the Legislature would enact a statutory mandate, yet intend it to be suspended from the start, relying on the deletion—four years earlier—of a fee provision in a predecessor statute. "In the end, we " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

We recognize that the Department provided declarations from three current and former division chiefs of the Department offering their opinions that the statutory mandate to prepare a plan was suspended by Assembly Bill No. 3085. On appeal, plaintiffs assert that these declarations lack foundation and independent evidentiary support. The Department counters that plaintiffs have forfeited any objections to the admission of the declarations because they failed to raise them in the trial court. We agree with the Department that the declarations properly are part of the record on appeal. Even so, they are of little value because they merely state legal conclusions.

For example, the division chiefs stated, "Funding for preparation of the report had been provided by the Legislature but was discontinued by the Legislature in 1992 by AB [No.] 3085 and in the Budget Acts subsequently enacted by the Legislature." The Department, however, concedes that there is nothing in any budget act that expressly demonstrates that funding has been discontinued for the current statutory mandate. The division chiefs' statements that funding was discontinued "in the Budget Acts" are nothing more than legal conclusions about the effect of the deletion of the fee provision. Similarly, the division chiefs each stated, "It is my understanding that under Government Code Section 11098, because the Legislature discontinued the funding for the preparation of the report, any mandate to prepare the report was suspended." This, again, is a legal conclusion about whether section 11098 applies to suspend the current statutory mandate.

Our Supreme Court has considered in detail how much weight courts should give to agency interpretation of statutes:

■ "Whether judicial deference to an agency's interpretation is appropriate and, if so, its extent—the 'weight' it should be given—is . . . fundamentally *situational*. . . . [T]wo broad categories of factors [are] relevant to a court's assessment of the weight due an agency's interpretation: Those 'indicating that the agency has a comparative interpretive advantage over the courts,' and those 'indicating that the interpretation in question is probably correct.' [Citations.]

"In the first category are factors that 'assume the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion. A court is more likely to defer to an agency's interpretation of its own regulation than to its interpretation of a statute, since the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.' [Citation.] The second group of factors . . .—those suggesting the agency's interpretation is likely to be correct—includes indications of careful consideration by senior agency officials . . . ." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–13 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

Here, the two broad categories of factors identified by the Supreme Court do not weigh in favor of judicial deference. First, the current and former division chiefs do not have any advantage over this court in determining whether Assembly Bill No. 3085 suspended the requirement to prepare and submit a safe drinking water plan. Although they certainly have specialized technical knowledge in drinking water and environmental management issues, they do not have any particular expertise in general statutory interpretation or legislative history. Second, there is no indication of careful consideration of the issue by the division chiefs. They indicated that it was their "understanding" that the statutory mandate was suspended, but they did not state the basis for this understanding. As a result, we give little weight to the division chiefs' opinions regarding the legal effect the 1992 deletion of a fee provision had on the subsequently imposed statutory duty to prepare and submit a plan.

For the reasons discussed above, we do not agree with the division chiefs' legal opinions and conclude that Assembly Bill No. 3085 did not discontinue funding for the current statutory mandate in section 116355. (See *Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 13 [after determining weight accorded agency interpretations, ultimate resolution of legal questions rests with courts].) Consequently, the Department was not

entitled to judgment on the ground that Government Code section 11098 suspended the statutory mandate to prepare a plan.

## II.  *Separation of powers*

As an alternative ground for affirming, the Department argues that the separation of powers doctrine would prohibit the trial court from compelling the preparation and submission of a safe drinking water plan. "Article III, section 3 of the California Constitution provides that '[t]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.' Article XVI, section 7 provides that '[m]oney may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant.' . . . It has long been clear that these separation-of-powers principles limit judicial authority over appropriations. [Citations.]" (*Butt v. State of California* (1992) 4 Cal.4th 668, 698 [15 Cal.Rptr.2d 480, 842 P.2d 1240].)

The Department relies on *Butt v. State of California, supra,* 4 Cal.4th 668, and *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580 [79 Cal.Rptr.3d 489]. In *Butt v. State of California,* the Supreme Court held that a trial court could not order the state to lend money to a financially distressed school district from specific funds that the Legislature had designated for other purposes. (*Id.* at pp. 697–698.) "In a valid exercise of its constitutional powers, the Legislature had directed each of these sums to specific agencies and narrow purposes which did not include the District and its financial emergency. . . . By diverting the funds from their earmarked destinations and purposes, the court invaded the Legislature's constitutional authority." (*Id.* at p. 698.)

In *County of San Diego v. State of California, supra,* 164 Cal.App.4th at page 587, two counties sued the state seeking reimbursement for the costs of providing state-mandated programs. The trial court ordered the state to pay one county over $41 million and the other county over $72 million, covering a 15-year period, pursuant to Government Code section 17617. (*County of San Diego v. State of California, supra,* at p. 592.) The appellate court concluded that the trial court's order "violate[d] the separation of powers doctrine because it effectively order[ed] the Legislature to appropriate funds in future state budget acts." (*Id.* at p. 594.) "The writ relief the court fashioned is improper because it commands the payment of funds *not yet appropriated.*" (*Id.* at p. 595.)

These cases do not apply here because plaintiffs do not seek disbursement of funds at all. Nor are they asking the court to order the Department to

expend funds that are designated for a different purpose or that have not been appropriated yet. The Department's argument boils down to the claim that a trial court may not order a state agency to do anything that would require the agency to spend money that it otherwise would choose not to spend. This is not what the cases hold. In *Butt v. State of California, supra,* 4 Cal.4th at page 694, for example, the Supreme Court did not find unconstitutional the trial court's order compelling the state to intervene to help a cash-strapped school district to stay open for the remainder of the school year, although such intervention would undoubtedly require the expenditure of funds. It was only the trial court's order compelling the state to use specific funds that had been designated for other purposes by the Legislature that ran afoul of the separation of powers doctrine.

■   The Department argues that a trial court order to prepare a plan would amount to an unconstitutional command to spend funds not appropriated by the Legislature. This argument is based on the notion that "the Legislature has not funded [the plan] since 1992." By having not funded the plan, the Department means only that there has been no dedicated funding source, such as a fee. There is no authority, however, for the proposition that the Legislature has "funded" an activity or program *only* if it creates a dedicated funding source. The Department contends that plaintiffs must "demonstrat[e] that the Legislature appropriated funds for" preparation of the plan, but again, this notion is unsupported by any authority. Identification of a legislative appropriation is not a prerequisite for a grant of writ petition compelling agency action under Code of Civil Procedure section 1085. Consequently, the separation of powers doctrine is not a basis to affirm the judgment.

■   In sum, we hold that the duty to prepare and submit a safe drinking water plan pursuant to section 116355 was not suspended. We express no opinion on whether an alternative remedy exists, whether the Department has a clear, present, ministerial duty, or whether plaintiffs have a correlative clear, present, and beneficial right to performance of the duty (*People v. Picklesimer, supra,* 48 Cal.4th at pp. 339–340), as these issues were not briefed fully or at all in this court.[3]

---

[3] Plaintiffs request that we take judicial notice of enrolled bills, reports, and sections of various budget acts. Although these materials are judicially noticeable (Evid. Code, §§ 459, subd. (a), 452), we exercise our discretion to deny the request because plaintiffs have not satisfactorily explained the relevance of the materials. In addition, with respect to most of the materials, plaintiffs did not request judicial notice in the trial court and have not explained why they failed to provide them to the trial court. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325–326 [48 Cal.Rptr.2d 87, 906 P.2d 1242] ["appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been presented to the trial court for it its consideration in the first instance"].)

## *DISPOSITION*

The judgment is reversed. The matter is remanded to enable the trial court to decide whether the requirements of Code of Civil Procedure section 1085 have been met. Costs are awarded to plaintiffs. Plaintiffs' request for judicial notice filed on August 2, 2010, is denied.

Cornell, J., and Kane, J. concurred.