Filed 3/20/17 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| RICARDO BERMUDEZ VAQUERO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STONELEDGE FURNITURE LLC, <br><br> Defendant and Respondent. | B269657 <br> (Los Angeles County <br> Super. Ct. No. BC522676) <br><br><br> **ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT** |


The opinion filed February 28, 2017 and certified for publication is modified as follows:

1. On page 14, in the first paragraph, after the first full sentence ending with the words "minimum hourly wage for such time," add as footnote 8 the following, which will require renumbering subsequent footnotes:

[8]     This case does not involve, and we have no occasion to question, the propriety of compensation plans that pay non-exempt employees a salary that compensates them for rest periods and other non-productive work time.

2.  On page 15, in the second sentence of the first full paragraph, on lines 7 and 8, the words "separately account" are deleted and replaced with the words "provide compensation."  As modified, the sentence reads:

> We conclude, however, that Wage Order No. 7 applies equally to commissioned employees, employees paid by piece rate, or any other compensation system that does not provide compensation for rest breaks and other nonproductive time.

This order does not change the judgment.

---

PERLUSS, P. J.          SEGAL, J.          KEENY, J. (Assigned)

Filed 2/28/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| RICARDO BERMUDEZ VAQUERO et al., | B269657 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC522676) |
| v. | |
| STONELEDGE FURNITURE LLC, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Elihu Berle, Judge.  Reversed and remanded with directions.

Cohelan Khoury & Singer, Michael D. Singer, Jeff Geraci; Law Offices of Raphael A. Katri, Raphael A. Katri; Law Offices of Kevin T. Barnes, Kevin T. Barnes and Gregg Lander for Plaintiffs and Appellants.

Littler Mendelson, J. Kevin Lilly and Scott M. Lidman for Defendant and Respondent.

# INTRODUCTION

Are employees paid on commission entitled to separate compensation for rest periods mandated by state law?  If so, do employers who keep track of hours worked, including rest periods, violate this requirement by paying employees a guaranteed minimum hourly rate as an advance on commissions earned in later pay periods?  We answer both questions in the affirmative, and reverse the trial court's ruling granting summary judgment in favor of the employer.

# FACTUAL AND PROCEDURAL BACKGROUND

Ricardo Bermudez Vaquero and Robert Schaefer worked as Sales Associates for Stoneledge Furniture, LLC, a retail furniture company doing business in California as Ashley Furniture HomeStores.  After termination of their employment, Vaquero and Schaefer filed a class action complaint alleging that Stoneledge's commission pay plan did not comply with California law.  The parties largely agree on the relevant facts regarding Stoneledge's employee compensation system.

A.     *Stoneledge's Compensation System*

From 2009 through March 29, 2014 Stoneledge compensated Sales Associates pursuant to the Sales Associate Commission Compensation Pay Agreement.  After a training period during which new employees received $12.01 per hour, Stoneledge paid sales associates on a commission basis.  If a sales associate failed to earn "Minimum Pay" of at least $12.01 per hour in commissions in any pay period, Stoneledge paid the

2

associate a "draw" against "future Advanced Commissions." The commission agreement explained: "The amount of the draw will be deducted from future Advanced Commissions, but an employee will always receive at least $12.01 per hour for every hour worked." The commission agreement included a table providing an example of how the draw and Advanced Commissions system worked, assuming 40 hours of "non-Training Time" in a work week:

| Week # | Min. Weekly Pay | Weekly Advanced Commission | Gross Pay | Week Draw (Owe) | Cumulative Draw (Owe) |
|--------|-----------------|----------------------------|-----------|-----------------|-----------------------|
| 1 | $480.40 | $300 | $480.40 | $180.40 | $180.40 |
| 2 | $480.40 | $400 | $480.40 | $80.40 | $260.80 |
| 3 | $480.40 | $550 | $480.40 | -$69.60 | $191.20 |
| 4 | $480.40 | $800 (-$191.20 draw) | $608.80 | $0 | $0 |
| 5 | $480.40 | $750 | $750 | $0 | $0 |

The commission agreement did not provide separate compensation for any non-selling time, such as time spent in meetings, on certain types of training, and during rest periods. Sales associates recorded this time, however, using Stoneledge's electronic timekeeping system. Sales associates clocked into the system at the start of each shift, clocked out and back in for meal periods, and clocked out again when their shifts ended. Sales associates did not clock out for rest periods. Stoneledge authorized and permitted sales associates to take rest periods of at least 10 consecutive minutes for every four hours worked or major fraction thereof.

Stoneledge contends that under its compensation plan "*all time during rest periods was recorded and paid as time worked identically with all other work time. . . .* [¶¶] Thus, Sales Associates are paid at least $12 per hour even if they make no sales at all." Although Stoneledge deducted from sales associates'

paychecks any previously paid draw on commissions, Stoneledge states such "repayment [was] never taken if it would result in payment of less than the [Minimum Pay of $12.01 per hour] for . . . all time worked in *any* week."

Effective March 30, 2014, Stoneledge implemented a new commission agreement that pays sales associates a base hourly wage of $10 "for all hours worked." In addition, sales associates can earn various types of incentive payments based on a percentage of sales. Under the new agreement, no portion of a sales associate's base pay is deducted from or credited against incentive payments.

### B. *The Litigation*

Vaquero and Schaefer filed a putative class action alleging causes of action for failure to provide paid rest periods under Labor Code section 226.7[1] and the applicable wage order, failure to pay all wages owed upon termination under section 203, unfair business practices, and declaratory relief.[2] Pursuant to the parties' stipulation, the trial court certified a class comprised of three subclasses of sales associates corresponding to the plaintiffs' three primary claims: unpaid rest periods, unpaid wages upon termination, and unfair business practices. The class is limited to sales associates employed by Stoneledge in

---

[1]     Undesignated statutory references are to the Labor Code.

[2]     The plaintiffs previously filed an action in state court claiming Stoneledge's compensation plan violated California's wage and hour laws, which Stoneledge removed to federal court. (See *Vaquero v. Ashley Furniture Industries, Inc.* (9th Cir. 2016) 824 F.3d 1150, 1152.)

California from September 30, 2009 through March 29, 2014, the time period during which the previous commission agreement was in effect.

Stoneledge filed a motion for summary judgment or in the alternative for adjudication, arguing that the rest period claim failed as a matter of law because Stoneledge paid its sales associates a guaranteed minimum for all hours worked, including rest periods. With respect to the claim for violation of section 203, Stoneledge argued a claim for rest period "premium pay" is not an action to recover "wages" under section 203 and, in any event, Stoneledge did not "willfully" fail to pay wages, as required for a violation of section 203. Stoneledge argued that, because the class claims for failure to pay for rest periods and for wages owed at termination failed as a matter of law, the derivative claim for unfair business practices also failed.

The trial court granted Stoneledge's motion and entered judgment for Stoneledge. The court found "Stoneledge's payment system specifically accounted for all hours worked . . . and guaranteed that [sales associates] would be paid more than the $12 an hour for those hours. With this system there was no possibility that the employees' rest period time would not be captured in the total amount paid each pay period." The court stated, "By tracking all the hours that its sales associates and employees were present at the facility, including rest periods, Stoneledge was able to ensure that the compensation it paid its employees via commission would never fail to include payment for the time employees spent taking their mandatory rest periods. [¶¶] Under Stoneledge's plan . . . sales associates are uniformly paid at or above a rate which expressly encompasses all the time present in the workplace and all the time worked,

5

including rest periods." The court therefore granted Stoneledge's motion for summary adjudication on the cause of action for violation of section 226.7.

The trial court, without examining the merits of the remaining claims, concluded they all failed because they were derivative of the rest period claim. The court stated, "With regard to the . . . causes of action for violation of Labor Code section 203, unfair business practices and declaratory relief, each of those causes of action are derivative of the . . . cause of action for failure to pay rest periods. [¶¶] Absent a failure by Stoneledge to pay plaintiffs for the required rest period, there would, as a consequence, be no unpaid wages remaining at the termination of the employment. Likewise, there would be no unfair business practice claim under [Government Code] section 17200. And the declaratory relief claim would also fail absent the underlying statutory violation upon which the cause of action is based." The plaintiffs timely appealed from the judgment.

## DISCUSSION

A. *Wage Order No. 7 and Compensation for Rest Periods*

The Legislature authorized the Industrial Welfare Commission (IWC) to regulate the wages, hours, and working conditions of various classes of workers to protect their health and welfare. (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 263; *Rodriguez v. E.M.E., Inc.* (2016) 246 Cal.App.4th 1027, 1033.) "To this end, the IWC promulgated so-called wage orders . . . for workers in a number of industries and

occupations." (*Rodriguez*, at pp. 1033-1034.)[3] "As a consequence, 'wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC.'" (*Rodriguez*, at p. 1034; see *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026.) "Those laws and wage orders are also subject to enforcement by a state agency, namely, the Division of Labor Standards Enforcement (DLSE)." (*Rodriguez*, at p. 1034; see *Brinker,* at pp. 1028-1029 & fn. 11.)[4]

"An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry." (*Brinker*, *supra*, 53 Cal.4th at p. 1033.) The rest period claim here is based on section 226.7 and Wage Order No. 7-2001, which applies to the mercantile industry. (See Cal. Code Regs. tit. 8, § 11070, subds. 1, 2(H) [defining "[m]ercantile [i]ndustry"] (Wage Order No. 7).)

---

[3] Although the IWC was defunded in 2004, its wage orders remain in effect. (*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 43; *Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 145, fn. 1.)

[4] "The DLSE is a division of the Department of Industrial Relations . . . , which is a department of California's Labor and Workforce Development Agency." (*Gomez v. J. Jacobo Farm Labor Contractor, Inc.* (E.D. Cal. 2016) 188 F.Supp.3d 986, 997, fn. 13.)

Section 226.7 provides: "An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or . . . order of the [IWC]." (§ 226.7, subd. (b).) "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an . . . order of the [IWC], . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." (§ 226.7, subd. (c).)

Wage Order No. 7 applies "to all persons employed in the mercantile industry whether paid on a time, piece rate, commission, or other basis." (Cal. Code Regs. tit. 8, § 11070, subd. 1.) Subdivision 4 of Wage Order No. 7 establishes an employer's duty to pay such employees the minimum wage "for all hours worked." (*Id.*, § 11070, subd. 4(A).)[5] With respect to rest periods, Wage Order No. 7 provides: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need

_____

[5] Subdivision 2(G) of Wage Order No. 7 defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (Cal. Code Regs. tit. 8, § 11070, subd. 2(G).) "Wages" includes "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (*Id.*, § 11070, subd. 2(O).)

8

not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. *Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.*" (Cal. Code Regs. tit. 8, § 11070, subd. 12(A), italics added.) Like section 226.7, subdivision (c), Wage Order No. 7 further requires an employer who fails to provide an employee a rest period in accordance with the wage order's provisions to pay the employee one hour of pay at the employee's regular rate of compensation for each work day the employer did not provide the employee with the rest period. (*Id., § 11070, subd. 12(B).)

"Wage orders are quasi-legislative regulations and are construed in accordance with the ordinary principles of statutory interpretation." (*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 43; see *Aleman v. AirTouch Cellular* (2012) 209 Cal.App.4th 556, 568; see also *Brinker*, *supra*, 53 Cal.4th at p. 1027 ["[t]he IWC's wage orders are to be accorded the same dignity as statutes"].) "Generally, '[w]hen a wage order's validity and application are conceded and the question is only one of interpretation, the usual rules of statutory interpretation apply.'" (*Rodriguez*, *supra*, 246 Cal.App.4th at p. 1034; see *Brinker,* at p. 1027.)

"The task of interpretation is to determine the legislative intent, looking first to the words of the wage order, construed in light of their ordinary meaning and statutory context." (*Rodriguez*, *supra*, 246 Cal.App.4th at p. 1034; see *Brinker*, *supra*, 53 Cal.4th at p. 1026; *Gonzalez, supra*, 215 Cal.App.4th at p. 43.) "If the language of the wage order is clear, it is applied without further inquiry. [Citation.] If the language can be interpreted to have more than one reasonable meaning, a court

9

may consider "'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'"' (*Gonzales*, at p. 44; see *Aleman, supra,* 209 Cal.App.4th at pp. 568-569.) "'Judicial construction that renders any part of the wage order meaningless or inoperative should be avoided.'" (*Rodriguez*, at p. 1034; accord, *Brinker*, at p. 1026; *Gonzalez*, at p. 44.) DLSE opinion letters, while not controlling, constitute "the type of experience and considered judgment that may properly inform our judgment." (*Augustus*, *supra*, 2 Cal.5th at p. 267; see *Brinker, supra,* 53 Cal.4th at p. 1029, fn. 11; *Rodriguez*, at p. 1034.)

In general, "'[s]tate wage and hour laws "reflect the strong public policy favoring protection of workers' general welfare and 'society's interest in a stable job market.'"'" (*Gonzales*, *supra*, 215 Cal.App.4th at p. 44; see *Cash v. Winn* (2012) 205 Cal.App.4th 1285, 1297.) "They are therefore liberally construed in favor of protecting workers. As our Supreme Court has stated, '"[i]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.'"' (*Gonzales*, at p. 44, quoting *Brinker, supra,* 53 Cal.4th at pp. 1026-1027; see *Augustus*, *supra*, 2 Cal.5th at p. 262 ["we liberally construe the Labor Code and wage orders to favor the protection of employees"]; *Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 667 ["[s]tatutes governing conditions of employment are to be construed broadly in favor of protecting

employees"]; *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [same].)

The trial court concluded that Wage Order No. 7 did not require Stoneledge to pay its commissioned employees separately for their rest periods and that Stoneledge's commission agreement "specifically accounted for all hours worked by the salespersons," including rest periods. We review this conclusion, which the trial court reached on summary judgment, and the court's interpretation of Wage Order No. 7, de novo. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618; *Rodriguez, supra*, 246 Cal.App.4th at p. 1032; *Gonzales, supra*, 215 Cal.App.4th at p. 44; see *Araquistain v. Pacific Gas & Electric Company* (2014) 229 Cal.App.4th 227, 231 ["'the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law [citation] which is subject to de novo review on appeal"].)

B.     *Wage Order No. 7 Requires Employers To Separately Compensate Covered Employees for Rest Periods*

The parties agree that Wage Order No. 7 applies to Stoneledge's sales associates and that Stoneledge permitted and authorized the rest periods mandated by California law and Wage Order No. 7. The parties disagree, however, whether California law, including Wage Order No. 7, required Stoneledge to separately compensate its sales associates for such rest periods. We conclude it does.

The plain language of Wage Order No. 7 requires employers to count "rest period time" as "hours worked *for which there shall be no deduction from wages*." (Cal. Code Regs. tit. 8, § 11070, subd. 12(A), italics added.) In *Bluford v. Safeway Stores, Inc.* (2013) 216 Cal.App.4th 864 the court interpreted this

11

language to require employers to "separately compensate[ ]" employees for rest periods where the employer uses an "activity based compensation system" that does not directly compensate for rest periods. (*Id.* at p. 872.)

*Bluford* involved Safeway truck drivers who sued Safeway for, among other things, failing to provide paid rest periods. (*Bluford*, *supra*, 216 Cal.App.4th at p. 868.) Safeway paid the drivers "based on mileage rates applied according to the number of miles driven, the time when the trips were made, and the locations where the trips began and ended." (*Id.* at p. 872.) Safeway asserted it intended to pay drivers for their rest periods and its compensation system purportedly subsumed those payments into the mileage rates Safeway negotiated in the drivers' collective bargaining agreement. (*Id.* at p. 871.) None of the bases on which Safeway paid its drivers, however, directly compensated them for rest periods. (*Id.* at p. 872.)

The court found Safeway's compensation system violated California law because the wage order applicable in that case, like Wage Order No. 7, prohibited employers from "deduct[ing] wages for rest periods."[6] (*Bluford*, *supra*, 216 Cal.App.4th at p. 871.) The court explained "[t]he wage order's requirement not to deduct wages for rest periods presumes the drivers are paid for their rest periods." (*Ibid.*) In the context of a piece-rate compensation plan like the one used by Safeway,[7] this

---

[6]    Like Wage Order No. 7, the wage order in *Bluford* counted authorized rest periods as "hours worked." (See *Bluford*, *supra*, 216 Cal.App.4th at p. 871, citing Wage Order Nos. 7, 9, Cal. Code Regs. tit. 8, §§ 11070, subd. 12; 11090, subd. 12.)

[7]    Under a "piece-rate" compensation system, employers pay employees "according to the number of units turned out," for

requirement means that employers must separately compensate employees for rest periods.  (*Id.* at p. 872.)

*Bluford* relied on *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, which held that employers cannot comply with minimum wage obligations by averaging wages across multiple pay periods; instead, "[t]he minimum wage standard applies to each hour worked by [employees] for which they were not paid." (*Id.* at p. 324.)  In *Armenta*, the court addressed a compensation plan that paid employees only for "productive" time, and not for "nonproductive" time such as time spent traveling between job sites.  The court explained that California wage orders (like Wage Order No. 7) that require employers to compensate employees "for all hours worked" require employers to pay employees for "all hours," including nonproductive time, "at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation."  (*Armenta*, *supra*, 135 Cal.App.4th at p. 323.)  Thus, under California law, the minimum or contracted wage requirement "applies to each hour worked by [employees] for which they [are] not paid."  (*Id.* at p. 324.)

Piece-rate compensation plans do not directly account for rest periods during which, like the nonproductive hours in *Armenta*, employees cannot earn wages.  The court in *Bluford* held that allowing employers like Safeway to account for rest periods indirectly by negotiating a purportedly higher piece rate violates the principles set forth in *Armenta* because such compensation plans effectively "averag[e] pay to comply with the minimum wage law instead of separately compensating

example, the amount of produce harvested, the number of miles driven, or the yard of carpet installed.  (See DLSE, Enforcement Policies and Interpretations Manual (Mar. 2006) § 2.5.1, p. 2-2.)

13

employees for their rest periods at the minimum or contractual hourly rate." (*Bluford, supra,* 216 Cal.App.4th at p. 872.)

We agree with *Bluford* that Wage Order No. 7 requires employers to separately compensate employees for rest periods if an employer's compensation plan does not already include a minimum hourly wage for such time. (See *Gonzales, supra,* 215 Cal.App.4th at pp. 48-49 [concluding that the identical language in Wage Order No. 4 requires employers to separately pay piece-rate workers for nonproductive time].) All of the federal courts that have considered this issue of California law have reached a similar conclusion and have held employers must separately compensate employees paid by the piece for nonproductive work hours. (See *Perez v. Sun Pacific Farming Co-op., Inc.* (E.D. Cal., June 8, 2015, No. 1:15-CV-00259-KJM-SKO) 2015 WL 3604165, pp. 5-7; *Ridgeway v. Wal-Mart Stores, Inc.* (N.D. Cal. 2015) 107 F.Supp.3d 1044, 1053; *Reinhardt v. Gemini Motor Transport* (E.D. Cal. 2012) 869 F.Supp.2d 1158, 1168; *Carrillo v. Schneider Logistics, Inc.* (C.D. Cal. 2011) 823 F.Supp.2d 1040, 1044; *Cardenas v. McLane FoodServices, Inc.* (C.D. Cal. 2011) 796 F.Supp.2d 1246, 1252; *Ontiveros v. Zamora* (E.D. Cal., Feb. 20, 2009, No. CIV.S-08-567 LKK/DAD) 2009 WL 425962, p. 3.)[8]

---

[8] Stoneledge argues the plaintiffs' reliance on federal cases interpreting California employment law is misplaced. It is proper, however, to look to federal decisions interpreting California law where the reasoning is "analytically sound." (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1432; see *id.* at p. 1432, fn. 6 ["[a]lthough not binding precedent on our court, we may consider relevant, unpublished federal district court opinions as persuasive"]; *Gonzales, supra,* 215 Cal.App.4th at p. 49 [a federal case applying California employment law is "instructive" where it involves similar facts].)

14

C.      *The Requirement To Separately Compensate for Rest Periods Applies to Employees Paid on Commission*

Neither *Bluford* nor the federal cases applying California law involved employees paid on commission.  Nor did any of those cases address the issue whether the requirement of separately compensating employees for rest periods applies to commissioned employees.  We conclude, however, that Wage Order No. 7 applies equally to commissioned employees, employees paid by piece rate, or any other compensation system that does not separately account for rest breaks and other nonproductive time.

The plain language of Wage Order No. 7 covers employees paid by commission.  (See Cal. Code Regs. tit. 8, § 11070, subd. 1 [applying to "all persons employed in the mercantile industry whether paid on a time, piece rate, commission, or other basis"]; *id*. at § 11070, subd. 2(O) ["wages" includes "amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation"].)  Where, as here, the language of a wage order is unambiguous, it is dispositive.  (*Brinker*, *supra*, 53 Cal.4th at p. 1028; see also *Gonzales*, *supra*, 215 Cal.App.4th at p. 49 [the wage order "does not allow any variance in its application based on the manner of compensation"].)

Moreover, nothing about commission compensation plans justifies treating commissioned employees differently from other employees.  (See *Gonzales*, *supra*, 215 Cal.App.4th at p. 49 ["[t]hat [defendant] compensated its technicians on a piece-rate basis is not a valid ground for varying either the application or

15

interpretation of the wage order"];[9] *Ridgeway, supra,* 107
F.Supp.3d at pp. 1052-1053 ["differences in pay structure are
non-dispositive of the issue . . . whether plaintiffs must be paid
for all hours worked"]; *Cardenas, supra,* 796 F.Supp.2d at p. 1252
[distinctions in payment systems do not detract from the holding
in *Armenta* that employers must compensate for "all hours
worked"].) The commission agreement used by Stoneledge during
the class period is analytically indistinguishable from a piece-rate
system in that neither allows employees to earn wages during
rest periods. Indeed, the purpose of a rest period is to rest, not to
work. (See § 226.7, subd. (b) [an employer may not require an
employee "to work during a meal or rest or recovery period
mandated pursuant to an applicable [wage] order"]; *Augustus,*
*supra,* 2 Cal.5th at p. 273 ["[a] rest period, in short, must be a
period of rest"]; *Perez, supra,* 2015 WL 3604165 at p. 7 ["[w]hen
an employer pays its employees by the piece . . . those employees
cannot add to their wage during rest breaks; a break is not for
rest if piece-rate work continues"]; DLSE, Enforcement Policies

---

[9]  *Gonzales* acknowledged the trial court in that case did not
address, and therefore the *Gonzales* court did not consider on
appeal, an employer's obligations with respect to "mandatory rest
breaks" or "employees who are compensated under commission
payment plans or any other incentive-based compensation
systems." (*Gonzales, supra,* 215 Cal.App.4th at p. 54.)
Stoneledge argues that this statement somehow precludes our
conclusion that the reasoning of *Armenta, Gonzales,* and *Bluford*
applies to employees paid by commission. At best, Stoneledge
misreads *Gonzales* when it argues that *Gonzales* "expressly
refused to extend" *Armenta* and *Bluford* (which was actually
decided after *Gonzales*) to commission pay plans. *Gonzales* does
not hold or say any such thing.

16

and Interpretations Manual (Mar. 2006) § 45.3.3, p. 45-8 ["the rest period begins when the employee reaches an area away from the work station that is appropriate for rest"].)

Stoneledge argues that commission sales may continue through rest periods because "sales and resultant commissions are routinely earned while employees are not present, including while on break." Stoneledge cites no authority or evidence in the record for this assertion. It also makes no sense to assume that a commission-based employee who works 100 minutes per 40-hour work week longer than another employee—for example, by greeting new customers, following-up with potential leads, or answering emails and phone calls related to pending orders— would not earn more in commissions than the employee who spent those same 100 minutes in a break room. (See *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 963 [citing testimony that an employee did not take rest breaks because "rest break[s] would cost me money"]; *Balasanyan v. Nordstrom, Inc.* (S.D. Cal. 2013) 294 F.R.D. 550, 560 ["salespeople may have a difficult time selling to customers [and earning commissions] when they are not available to customers"].) Stoneledge admits as much when it concedes "[t]he only opportunity lost by taking a rest period is to make a sale that would increase wages beyond the $12 minimum weekly pay rate."

The DLSE Enforcement Policies and Interpretations Manual supports our conclusion. Section 47.7 of the DLSE Manual, entitled "All Hours Must Be Compensated Regardless Of Method Used In Computation," states that "if, as a result of the directions of the employer, the compensation received by piece rate *or commissioned* workers is reduced because they are precluded, by such directions of the employer, from earning *either*

17

*commissions* or piece rate compensation during a period of time, the employee must be paid at least the minimum wage (or contract hourly rate if one exists) for the period of time the employee's opportunity to earn *commissions* or piece rate [is reduced]."  (DLSE, Enforcement Policies and Interpretations Manual (Mar. 2006) § 47.7, p. 47-7, italics added; see *Peabody, supra*, 59 Cal.4th 662, 670 [adopting the DLSE Manual's interpretation of a wage order even though "the DLSE's enforcement policies are not entitled to deference"]; *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 902 [although "statements in the DLSE Manual are not binding on the courts because the rules were not adopted under the Administrative Procedure Act," they "may be considered for their persuasive value"]; accord, *Augustus, supra*, 2 Cal.5th at p. 262; *Brinker, supra,* 53 Cal.4th at p. 1029, fn. 11.)  Thus, the DLSE Manual treats commissioned and piece-rate employees alike for purposes of applying the minimum wage requirement to nonproductive working hours.  There is no reason California law should not treat these categories of workers the same for purposes of complying with the requirement to provide paid rest periods.

Stoneledge responds to the DLSE Manual's interpretation of the Labor Code and wage orders by seizing on the language that refers to tasks performed "as a result of the directions of the employer" and arguing that, because rest breaks for commissioned employees do not fall into this category, the DLSE Manual's guidance is not persuasive.  The trial court agreed with this argument, stating that rest periods are "readily distinguishable from the required yet uncompensated work" at issue in other cases.  Both Stoneledge and the trial court,

however, improperly discount the language of Wage Order No. 7, which counts rest periods as "hours worked" and requires compensation for those hours even though rest periods are, admittedly and by design, nonproductive. (Cal. Code Regs. tit. 8, § 11070, subd. 12(A); see DLSE Manual, § 45.3.2, at p. 45-8 [subdivision 12 of each wage order "requires that the rest period time shall be counted as hours worked for which there shall be no deduction from wages"].) In addition, by requiring employers to compensate a commissioned employee for time during which the employee is working but precluded from selling (such as while in a department meeting or training session), section 47.7 of the DLSE Manual does not negate that requirement for time attributable to rest periods. It simply makes clear that commissioned employees, like all employees subject to Wage Order No. 7, are entitled to compensation for each hour worked.

Moreover, California law and public policy have long viewed mandatory rest periods "'as part of the remedial worker protection framework'" and require us to construe Wage Order No. 7 to "best effectuate[ ] that protective intent." (*Brinker*, *supra*, 53 Cal.4th at p. 1027; accord, *Rodriguez*, *supra*, 246 Cal.App.4th at p. 1039.) Indeed, the Legislature views the right to a rest period as so sacrosanct that it is unwaivable. (See § 219 ["[n]othing in this article [including section 226.7] . . . can in any way be contravened or set aside by a private agreement"]; *Brinker*, 53 Cal.App.4th at p. 1033 [right to rest breaks cannot be waived].) Compensation plans that do not compensate employees directly for rest periods undermine this protective policy by discouraging employees from taking rest breaks. (See *Augustus*, *supra*, 2 Cal.5th at p. 271 [requiring security guards to take "on-call rest periods" would "undermine the rationale underlying the

19

provision of rest periods during the workday"]; *Cicairos*, *supra*, 133 Cal.App.4th at 963 [compensation plan that did not track rest periods discouraged employees from taking rest breaks].)

Stoneledge also argues that Wage Order No. 7 cannot require employers to pay commissioned employees (as opposed to piece-rate employees) separately for rest periods because section 226.2, which requires employers to compensate piece-rate employees for rest, recovery, and other nonproductive time, does not apply to commissioned employees. Nothing in section 226.2, however, suggests that the Legislature intended to adopt a different rule for commission-based employees or to nullify the plain language of Wage Order No. 7. (See *Rodriguez*, *supra*, 246 Cal.App.4th at p. 1034 ["'[j]udicial construction that renders any part of the wage order meaningless or inoperative should be avoided"]; accord, *Gonzales*, *supra*, 215 Cal.App.4th at p. 43.) Section 226.2 does not even mention commission-based employees. Instead, the introductory paragraph of section 226.2 states, in relevant part: "This section shall apply for employees who are compensated on a piece-rate basis for any work performed during a pay period," and "*shall not be construed to limit or alter* minimum wage or overtime compensation requirements, or *the obligation to compensate employees for all hours worked under any other statute or local ordinance*." (Italics added.) Section 226.2 does not limit or alter the obligation of employers to compensate commission-based employees "for all hours worked," including for rest periods. The fact the Legislature "could have drafted [section 226.2] to include both . . . piece-rate and commission plans," as Stoneledge argues, indicates nothing about the Legislature's intent with regard to commission plans, and we decline to imply any such intent. (See *In re*

20

*Christian S.* (1994) 7 Cal.4th 768, 776 ["'an intention to legislate by implication is not to be presumed'"]; *Sabatasso v. Superior Court* (2008) 167 Cal.App.4th 791, 797 ["'"[a]s a rule, courts should not presume an intent to legislate by implication"'"].)[10]

> D. *Stoneledge's Commission Agreement Did Not Separately Compensate Sales Associates for Rest Periods*

Stoneledge contends that its commission plan complied with California law by "counting as hours worked" the time sales associates spent taking rest breaks and not deducting from wages for those hours. These arguments misinterpret California law and ignore how Stoneledge's commission agreement worked.

We agree with Stoneledge that, under the commission agreement in effect during the class period, the company did in fact keep track of hours worked, including rest periods. We also agree that the company treated "break time identically with other work time." The problem with Stoneledge's compensation system, however, is that the formula it used for determining commissions did not include any component that directly compensated sales associates for rest periods. Stoneledge merely multiplied weekly "Delivered Sales" (less returns and credits) by an applicable commission rate and paid that amount if it

_____

[10] We therefore deny Stoneledge's motion for judicial notice of various legislative and Department of Industrial Relations materials regarding section 226.2 as not relevant to the appeal. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4; *Newton-Enloe v. Horton* (2011) 193 Cal.App.4th 1480, 1492, fn. 3.) We grant its motion for judicial notice of the 2002 Update of the DLSE Enforcement Policies and Interpretation Manual (Revised), sections 2.5.1 and 2.5.4.

21

exceeded the minimum contractual rate. Like the compensation plans courts have found unlawful for failing to pay for nonproductive time, Stoneledge's commission agreement did not compensate for rest periods taken by sales associates who earned a commission instead of the guaranteed minimum. (See *Bluford*, *supra*, 216 Cal.App.4th at pp. 870, 872 [Safeway's piece-rate plan did not "directly compensate[ ] for rest periods," "did not account for rest periods or provide an ability to be paid for them," and "provided no means by which an employee could verify he was paid for his rest periods"]; *Gonzales*, *supra*, 215 Cal.App.4th at p. 50 ["if [an employee's] piece-rate pay is allocated only to piece-rate hours, he is not paid at all for his nonproductive hours"]; *Ridgeway*, *supra*, 107 F.Supp.3d at p. 1050 [compensation system that "paid [for rest breaks] through activity pay for other tasks" did not comply with California law]; *Shook v. Indian River Transp. Co.* (E.D. Cal. 2014) 72 F.Supp.3d 1119, 1125, fn. 3 ["hours worked pursuant to a piece-rate system may not be used as a credit toward rest breaks, which, like other hours worked, must be separately compensated"]; *Cardenas*, *supra*, 796 F.Supp.2d at p. 1253 ["piece-rate formula" whose "components do not calculate for the pre- and post-shift duties and breaks . . . did not separately compensate employees for [this time] in violation of California law"]; *Ontiveros*, *supra*, 2009 WL 425962 at pp. 2-3 [payment system that paid by the task failed to compensate for nonproductive work such as rest breaks].) Sales associates who were paid their commission received the same amount of compensation regardless of whether they took rest breaks.

For sales associates whose commissions did not exceed the minimum rate in a given week, the company clawed back (by deducting from future paychecks) wages advanced to compensate

22

employees for hours worked, including rest periods. The advances or draws against future commissions were not compensation for rest periods because they were not compensation at all. At best they were interest-free loans. Stoneledge cites no authority for the proposition that a loan for time spent resting is compensation for a rest period. To the contrary, taking back money paid to the employee effectively reduces either rest period compensation or the contractual commission rate, both of which violate California law. (See § 221 [prohibiting employers from collecting or receiving from an employee "any part of wages theretofore paid by said employer"]; § 222 [prohibiting employers from withholding any part of a wage agreed upon]; § 223 [prohibiting employers from "secretly pay[ing] a lower wage while purporting to pay the wage designated by statute or by contract"]; cf. *Armenta*, *supra*, 135 Cal.App.4th at p. 323 [averaging wages across pay periods to satisfy minimum wage requirements "effectively reduces [employees'] contractual hourly rate"].)

Thus, when Stoneledge paid an employee only a commission, that commission did not account for rest periods. When Stoneledge compensated an employee on an hourly basis (including for rest periods), the company took back that compensation in later pay periods. In neither situation was the employee separately compensated for rest periods.

The table in Stoneledge's commission agreement in effect during the class period, provided again here for clarity, illustrates these problems:

| Week # | Min. Weekly Pay | Weekly Advanced Commission | Gross Pay | Week Draw (Owe) | Cumulative Draw (Owe) |
|--------|-----------------|----------------------------|-----------|-----------------|------------------------|
| 1 | $480.40 | $300 | $480.40 | $180.40 | $180.40 |
| 2 | $480.40 | $400 | $480.40 | $80.40 | $260.80 |
| 3 | $480.40 | $550 | $480.40 | -$69.60 | $191.20 |
| 4 | $480.40 | $800 (-$191.20 draw) | $608.80 | $0 | $0 |
| 5 | $480.40 | $750 | $750 | $0 | $0 |

A sales associate who works 40 hours in Week 1 but earns only $300 in commissions is advanced an additional $180.40 to bring that employee up to a minimum $12.01 per hour worked (including rest periods). In Week 2 the sales associate improves but still earns only $400 in commissions and the company must advance another $80.40 from future commissions to ensure the employee receives the guaranteed minimum. The draws paid in Weeks 1 and 2 are sufficient to pay the sales associate $12.01 per hour for 1.67 hours of authorized break time during each of those weeks. When the sales associate finally earns commissions above the guaranteed minimum in Weeks 3 and 4, however, Stoneledge deducts the amounts advanced in Weeks 1 and 2 from gross pay in Weeks 3 and 4. Thus, the draws paid in Weeks 1 and 2 are not compensation to the employee (for rest periods or otherwise) because the employee has to pay them back. When in Week 5 the sales associate finally earns a full commission, it is impossible to determine whether the sales associate is compensated for rest periods and, if so, at what rate. The sales associate in Week 5 earns and is paid the same amount regardless of whether he or she took a rest break during that week. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1104 ["[i]f denied two paid rest periods in an eight-hour work day, an employee essentially performs 20 minutes of 'free' work, i.e., the employee receives the same amount of compensation for working through the rest periods that the employee would have received had he or

she been permitted to take the rest periods"]; accord, *Augustus*, *supra*, 2 Cal.5th at p. 266.) Thus, Stoneledge's contention that "a Sales Associate at rest is earning at least $12 per hour" is only true for sales associates who were never paid by commission.

That Stoneledge "accounted for" or "tracked" hours worked including rest periods does not, without more, comply with California law. (See *Armenta*, *supra*, 135 Cal.App.4th at p. 324 [compensation plan that paid plaintiffs weekly at an amount exceeding the total hours worked multiplied by the minimum wage did not pay minimum wage "for each hour worked" as required by California law]; *Perez*, *supra*, 2015 WL 3604165 at p. 3 [rejecting the argument that an employer may pay piece rate employees for rest period time through their "total piece rate earnings" so long as those earnings "average out to at least the minimum wage"]; *Balasanyan*, *supra*, 294 F.R.D. at p. 554 [certifying class of plaintiffs alleging that a guaranteed minimum draw per hour on future commissions did not adequately compensate them for non-selling time]; *Ontiveros*, *supra*, 2009 WL 425962 at p. 2 [rejecting the argument that an employer may pay piece rate employees for rest breaks and other non-piece rate work "so long as the average hourly compensation for employees does not fall below the minimum wage"].)

Our conclusion does not cast doubt on the legality of commission-based compensation. Instead, we hold only that such compensation plans must separately account and pay for rest periods to comply with California law. Nor will our decision lead to hoards of lazy sales associates. The commission agreement in effect during the class period provided that a sales associate who failed to meet minimum sales expectations (which generated commissions well above the guaranteed minimum) was subject to

25

disciplinary measures up to and including termination.  Thus, employers like Stoneledge have methods to ensure that an employee's productivity does not suffer as a result of complying with California law by paying a minimum wage for rest periods.

Because Stoneledge did not separately compensate sales associates for rest periods as required by California law, the trial court erred in granting summary adjudication on the plaintiffs' cause of action for violation of section 226.7.  The trial court's ruling that the plaintiffs' other causes of action failed because the section 226.7 claim failed was also erroneous.  Because the trial court did not address the merits of Stoneledge's motion for summary adjudication on the plaintiffs' other causes of action, the court on remand is to consider the remainder of Stoneledge's motion.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order granting Stoneledge's motion for summary judgment and to enter a new order denying Stoneledge's motion for summary judgment and Stoneledge's motion for summary adjudication on the cause of action for violation of section 226.7. The trial court is also directed to rule on the merits of

26

Stoneledge's motion for summary adjudication on the plaintiffs' other causes of action.  Plaintiffs are to recover their costs on appeal.



SEGAL, J.

We concur:



PERLUSS, P. J.



KEENY, J.[*]

_____

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.