Filed 7/14/14

# IN THE SUPREME COURT OF CALIFORNIA

SUSAN J. PEABODY,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff and Appellant,　　　)
　　　　　　　　　　　　　　　　　　)　　　　　S204804
　　　　　　　　v.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
TIME WARNER CABLE, INC.,　　　　　)　　　9th Cir. No. 10-56846
　　　　　　　　　　　　　　　　　　)　　　C.D. Cal. No.
　　　　　Defendant and Respondent.　)　　2:09-cv-06485-AG-RNB
_____)

Susan Peabody worked for Time Warner Cable, Inc. (Time Warner), as a commissioned salesperson. She received biweekly paychecks, which included hourly wages in every pay period and commission wages approximately every other pay period. After Peabody stopped working for Time Warner, she sued, alleging various wage and hour violations. Time Warner removed the matter to federal court and successfully moved for summary judgment. Peabody appealed.

At the request of the United States Court of Appeals for the Ninth Circuit (*Peabody v. Time Warner Cable, Inc.* (9th Cir. 2012) 689 F.3d 1134 (*Peabody*); Cal. Rules of Court, rule 8.548), we consider whether an employer may attribute commission wages paid in one pay period to other pay periods in order to satisfy California's compensation requirements.[1] We conclude the answer is no.

---

[1]　The Ninth Circuit framed the issue as follows: "To satisfy California's compensation requirements, whether an employer can average an employee's commission payments over certain pay periods when it is equitable and reasonable

*(Footnote continued on next page.)*

1

## I.  BACKGROUND

From July 2008 to May 15, 2009, Peabody was a Time Warner account executive selling advertising on the company's cable television channels.  Every other week, Time Warner paid $769.23 in hourly wages, the equivalent of $9.61 per hour, assuming a 40-hour workweek.  About every other pay period, Time Warner paid commission wages under its account executive compensation plan.

In her class action suit, Peabody alleged:  (1) she regularly worked 45 or more hours per week, but was never paid overtime wages; (2) she occasionally worked more than 48 hours per week, earning less than the minimum wage in those weeks when she was paid only hourly wages; and (3) due to Time Warner's implementation of a new compensation plan in March 2009, she was not paid all of the commission wages owed on her January and February 2009 sales.  She also sought statutory penalties for the late payment of wages and for itemized wage statement violations.[2]

Time Warner removed the matter to federal court and sought summary judgment.  Concerning commission wages, it noted that, under all versions of its

---

*(Footnote continued from previous page.)*

for the employer to do so."  (*Peabody*, *supra*, 689 F.3d at p. 1135.)  Our order reformulated the question using language proposed by Time Warner:  "May an employer, consistent with California's compensation requirements, allocate an employee's commission payments to the pay periods for which they were earned?"  We restate the question to conform to the facts at issue in the underlying matter.  (Cal. Rules of Court, rule 8.548(f)(5).)

[2]      (Allegations for violations of Lab. Code, §§ 510 [overtime], 1194 [minimum wage; see Lab. Code, former § 1182.12 (Stats. 2006, ch. 230, § 1, pp. 2078-2079 [applicable minimum wage was $8 per hour])], 201 [payment of wages upon discharge], 203 [late payment of wages], 226 [itemized statements]; subsequent unlabeled statutory citations are to the Labor Code.)

compensation plan, an "account executive earned a commission only upon the occurrence of three events:  (1) procurement of the order; (2) broadcast of the advertising; and (3) collection of the revenue from the client."  Commissions for January and February 2009 sales were neither earned nor owed until additional conditions were satisfied, which did not occur until after adoption of the March 2009 compensation plan.  Thus, the commissions were correctly paid in accordance with the operative plan.

As to overtime, Time Warner did not dispute that Peabody regularly worked 45 hours per week and was paid no overtime.  It argued that she fell within California's "commissioned employee" exemption and thus was not entitled to overtime compensation.  (Cal. Code Regs., tit. 8, § 11040, subd. 3(D).)  The exemption requires, among other things, that an employee's "earnings exceed one and one-half (1 1/2) times the minimum wage" (*ibid*.), i.e., $12 per hour.  Time Warner acknowledged that most of Peabody's paychecks included only hourly wages and were for less than that amount.  It argued, however, that commissions should be reassigned from the biweekly pay periods in which they were paid to earlier pay periods.  It reasoned that the commissions should be attributed to the "*monthly pay period* for which they were earned."  (Italics added.)  Attributing the commission wages in this manner would satisfy the exemption's minimum earnings prong.

As to minimum wages, Time Warner argued that attributing commission wages in this way would necessarily mean Peabody's compensation also was, at all times, higher than the applicable minimum wage.

The district court granted summary judgment.  First, it determined that the January and February 2009 commissions were not earned, and thus not owed, until after adoption of the new compensation plan.  Second, it concluded that Time Warner could attribute commission wages paid in one biweekly pay period to

3

other pay periods for the purpose of satisfying California's compensation requirements. In light of this conclusion, the court rejected Peabody's overtime and minimum wage claims, as well as her other claims.

The Ninth Circuit affirmed as to the commission wages claim. (*Peabody*, *supra*, 689 F.3d at p. 1135, fn. 1.) It determined, however, that underlying the remaining issues was the "question of whether Peabody's commissions can be allocated over the course of a month, or whether the commissions must only be counted toward the pay period in which the commissions were paid." (*Id.* at p. 1135.) Finding no clear controlling precedent in California case law, the Ninth Circuit asked this court to answer that question. (*Ibid.*)

## II. DISCUSSION

We apply settled principles when construing statutes and begin with the text. If it "is clear and unambiguous our inquiry ends." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 (*Murphy*).) "[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees." (*Ibid.*; see *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026-1027 (*Brinker*).) To that end, we narrowly construe exemptions against the employer, "and their application is limited to those employees plainly and unmistakably within their terms." (*Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 562; see *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795.) We employ these same principles to wage orders promulgated by the Industrial Welfare Commission (IWC).[3] (*Brinker*, at p. 1027.)

---

[3] The IWC "is the state agency empowered to formulate wage orders governing employment in California. [Citation.] The Legislature defunded the IWC in 2004, however its wage orders remain in effect." (*Murphy*, *supra*, 40

*(Footnote continued on next page.)*

4

Under section 510, subdivision (a), employees who "work in excess of eight hours in one workday [or] . . . in excess of 40 hours in any one workweek . . . shall be" paid overtime compensation. (See Wage Order No. 4, subd. 3(A) [same].) Employers must compensate such employees "at the rate of no less than one and one-half times the [employee's] regular rate of pay." (§ 510, subd. (a); see Wage Order No. 4, subd. 3(A) [same].) The commissioned employee exemption, however, provides that the overtime provisions "shall not apply to any employee whose earnings exceed one and one-half (1 1/2) times the minimum wage if more than half of that employee's compensation represents commissions." (Wage Order No. 4, subd. 3(D).)

Time Warner contends Peabody is an exempt commissioned employee. In response, Peabody focuses on the exemption's minimum earnings prong, i.e., whether her earnings exceeded $12 per hour, or "one and one-half . . . times the minimum wage."[4] (Wage Order No. 4, subd. 3(D).) It is undisputed that the majority of her paychecks were for *less* than that amount. Thus, the only way the prong could be satisfied is if commission wages paid in one biweekly pay period can be attributed to other pay periods. In arguing that they may, Time Warner primarily contends that, although it issued Peabody a paycheck every two weeks, (1) it permissibly used a *monthly pay period* when paying commission wages, and

---

*(Footnote continued from previous page.)*

Cal.4th at p. 1102, fn. 4.) Wage order No. 4-2001, which covers salespersons and sales agents, applies here. (Cal. Code Regs., tit. 8, § 11040, subd. 2(O) (Wage Order No. 4).)

[4] Time Warner argues the exemption's second prong was satisfied because Peabody's commission wages represented 77 percent of her overall compensation. We express no opinion concerning this contention.

(2) in order to determine earnings for purposes of the exemption, commission wages should be attributed not to the pay periods in which they were *paid*, but instead to the weeks of the monthly period in which they were *earned*. Time Warner fails to persuade.

Its first contention need not detain us long. Section 204, subdivision (a) (section 204(a)) provides, "[a]ll wages . . . earned by any person in any employment are due and payable twice during each calendar month . . . ." Wages include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, *commission basis,* or other method of calculation." (§ 200, subd. (a), italics added.) In other words, all earned wages, *including commissions*, must be paid no less frequently than semimonthly. Limited exceptions do exist, demonstrating that the Legislature knows how to establish a different payroll period when it wishes to do so. (§§ 204(a) [certain executive, administrative, and professional employees], 204.1 [commissioned car salespersons]; see *Murphy*, *supra*, 40 Cal.4th at p. 1107.)

Time Warner notes the Division of Labor Standards Enforcement (DLSE) has observed that "[c]ommission programs which *calculate* the amount owed once a month (or less often) are common."[5] (DLSE Opn. Letter No. 2002.12.09-2 (2002) p. 2, italics added.) This statement, however, does not connote approval of *monthly pay periods*. It merely acknowledges that (1) commissions are not earned or owed until agreed-upon conditions have been satisfied, and (2) such satisfaction often may occur on a monthly or less frequent basis. For example, as in this case,

---

[5] The DLSE is the " ' "agency empowered to enforce California's labor laws, including wage orders." ' [Citation.] The DLSE's opinion letters, ' " ' "while not controlling . . . , do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." ' " ' [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1029, fn. 11.)

an employment agreement may require receipt of a client's payment before any commissions on sold advertising are earned. If a client routinely pays its bills on the 15th of each month, commissions will be earned and owed once a month. Yet this does not create a *monthly pay period* in contravention of section 204(a). To summarize, section 204 establishes semimonthly pay periods, but there is no obligation to pay *unearned* commission wages in any pay period. Commissions are owed only when they have been earned, even if it is on a monthly, quarterly, or less frequent basis.

We next consider Time Warner's contention that commission wages paid in one biweekly pay period may be attributed to other pay periods to satisfy the exemption's minimum earnings prong. Specifically, Time Warner argues that Peabody's commissions, which were always paid on the final biweekly payday of each month, should be attributed to the weeks of the *preceding* month. For example, it contends the $2,041.33 in commission wages it paid on November 26, 2008, should be attributed to the four workweeks of October 2008. Time Warner's ability to satisfy the minimum earnings prong hinges on its ability to attribute commissions in this way.[6] We conclude it may not do so. Whether the minimum earnings prong is satisfied depends on the amount of wages *actually paid* in a pay period. An employer may not attribute wages paid in one pay period to a prior pay period to cure a shortfall.

---

**6** To illustrate: Assuming Peabody worked 45 hours per week, her earnings could only exceed one and one-half times the minimum wage, thereby satisfying the prong, if she was paid more than $540 per week ($12 x 45 hours). In October 2008, she was paid $769.23 in hourly wages in the first biweekly pay period, making her weekly earnings $384.62. Consequently, Peabody's weekly earnings exceeded $540 only if Time Warner can attribute the $2,041.33 in commission wages paid on November 26, 2008, to the four October workweeks: ($2,041.33 ÷ 4) + $384.62 = $894.95.

This interpretation narrowly construes the exemption's language against the employer with an eye toward protecting employees. (*Ramirez v. Yosemite Water Co.*, *supra*, 20 Cal.4th at pp. 794-795.) It is also consistent with the purpose of the minimum earnings requirement. Making employers actually pay the required minimum amount of wages in each pay period mitigates the burden imposed by exempting employees from receiving overtime. This purpose would be defeated if an employer could simply pay the minimum wage for all work performed, including excess labor, and then reassign commission wages paid weeks or months later in order to satisfy the exemption's minimum earnings prong.

Additionally, permitting wages paid in one pay period to be attributed to a different pay period would be inconsistent with several Labor Code provisions. Section 204(a), for example, requires that semimonthly paychecks include the wages earned *during that pay period*. Section 226 requires that the paychecks be accompanied by an itemized statement listing the "(1) gross wages earned, . . . (5) net wages earned, [and] (6) the inclusive dates of the period for which the employee is paid." (§ 226, subd. (a).) Reassigning wages in the manner suggested by Time Warner would ignore the obligations imposed by these statutory provisions.

Our interpretation is also consistent with the enforcement policies of the DLSE. The agency has identified those requirements that must be met to satisfy the commissioned employee exemption: "[1] . . . to comply with the requirements of the exemption and of [section 204], for each workweek in the pay period the earnings of the employee . . . must exceed 1.5 times the minimum wage for each hour worked during the pay period. [¶] [2] . . . the payment of the earnings of more than 1.5 times the minimum wage . . . *must be made in each pay period*. Therefore, it is not permissible to defer any part of the wages due for one period until payment of the wages due for a later period. [¶] [3] Compliance with the

8

requirements of the exemption is determined on a workweek basis.  The minimum compensation component of the exemption *must be satisfied in each workweek and paid in each pay period*."  (DLSE, Enforcement Policies and Interpretations Manual (June 2002) § 50.6.1, p. 50-5, italics added.)  Although the DLSE's enforcement policies are not entitled to deference (*Martinez v. Combs* (2010) 49 Cal.4th 35, 50, fn. 15), we adopt its interpretation having independently determined that it is correct.  (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 563.)

Finally, Time Warner contends that federal law permits the sort of wage attribution it advocates, and it urges us to follow suit.  Although it is true that the commissioned employee exemption has a federal counterpart in 29 U.S.C. section 207(i), "[w]e have previously cautioned against 'confounding federal and state labor law' . . . ' . . . where the language or intent of state and federal labor laws substantially differ.' "  (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 68.)  Unlike state law, federal law does not require an employee to be paid semimonthly.  (*Olson v. Superior Pontiac- GMC, Inc.* (11th Cir. 1985) 765 F.2d 1570, 1574-1575.)  It also permits employers to defer paying earned commissions so long as the employee is paid the minimum wage in each pay period.  (*Id.* at pp. 1578-1579.)  In light of these substantial differences from California law, reliance on federal authorities to construe state regulations would be misplaced.

In conclusion, we hold that an employer satisfies the minimum earnings prong of the commissioned employee exemption only in those pay periods in which it *actually pays* the required minimum earnings.  An employer may not satisfy the prong by reassigning wages from a different pay period.[7]

---

[7]    Time Warner also argued that reassigning commission wages would satisfy its obligation to pay a minimum wage.  This argument fails for the same reason —

*(Footnote continued on next page.)*

## III. CONCLUSION

In response to the Ninth Circuit's request, we conclude that an employer may not attribute commission wages paid in one pay period to other pay periods in order to satisfy California's compensation requirements.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**BUTZ, J.   \***

---

\*        Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

*(Footnote continued from previous page.)*

wages paid in one pay period cannot be reassigned to satisfy other pay periods' compensation requirements.  If anything, the answer is clearer in the minimum wage context.  Wage Order No. 4 obligates an employer to "pay to each employee, *on the established payday for the period involved*, not less than the applicable minimum wage for all hours worked in the payroll period . . . ."  (Wage Order No. 4, subd. 4(B), italics added.)

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Peabody v. Time Warner Cable, Inc.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.4548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S204804
**Date Filed:** July 14, 2014
_____

**Court:**
**County:**
**Judge:**

_____
__
**Counsel:**

Van Vleck Turner & Zaller and Brian F. Van Vleck for Plaintiff and Appellant.

Alexander Krakow + Glick and Michael Morrison for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Wargo & French, J. Scott Carr and Joseph W. Ozmer II for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Brian F. Van Vleck
Van Vleck Turner & Zaller
6310 San Vicente Boulevard, Suite 430
Los Angeles, CA  90048
(323) 592-3505

Joseph W. Ozmer II
Wargo & French
999 Peachtree Street NE, 26th Floor
Atlanta, GA  30309
(404) 853-1500