Filed 8/24/20  Marshall v. Landry's CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TERRI MARSHALL, | |
| Plaintiff and Appellant, | G057194 |
| v. | (Super. Ct. No. 30-2017-00913664) |
| LANDRY'S, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.

Righetti Glugoski, Matthew Righetti and John Glugoski for Plaintiff and Appellant.

Law Offices of Mary E. Lynch, Mary E. Lynch; Sheppard, Mullin, Richter & Hampton, Ryan D. McCortney and Karin Dougan Vogel for Defendant and Respondent.

*          *          *

INTRODUCTION

Following a bench trial of plaintiff Terri Marshall's wage and hour claims against her former employer Landry's, Inc. (Landry's), the trial court found Landry's had properly classified Marshall as exempt in her role as a "front of the house manager" at Joe's Crab Shack restaurants under the executive exemption set forth in Industrial Welfare Commission Wage Order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050) (Wage Order No. 5) and section 515 of the Labor Code. Marshall contends the judgment entered in favor of Landry's must be reversed because (1) the trial court erred by failing to presume Marshall was a nonexempt employee until Landry's carried its burden of proving the requirements of the exemption had been satisfied; and (2) insufficient evidence showed Marshall "plainly and unmistakably" fell within the executive exemption.

We affirm. In the statement of decision, the trial court expressly applied the correct presumption and burden of proof. Substantial evidence supported the court's finding that Marshall was properly classified as an exempt employee during the relevant time period.

FACTS[1]

In March 2002, Marshall began working as a nonexempt employee for Joe's Crab Shack restaurant in Long Beach (the Long Beach restaurant). In 2004, she applied for and was accepted into the Manager in Training Program (the MIT). During her participation in the MIT, Marshall was trained in the areas of recruiting, interviewing and hiring employees, scheduling employees, coaching employees, preparing and presenting performance reviews, planning and controlling costs, labor law issues, safety and OSHA issues, management and leadership theories, and several other management

---

[1] The facts contained in this section are taken from facts contained in the trial court's statement of decision and the parties' stipulated facts.

tasks. During the MIT, Marshall also completed "required management reading and management projects, took numerous exams, and was given numerous performance reviews and prepared self-evaluations." While Marshall was in the MIT, she was treated as a nonexempt employee.

On May 29, 2004, after she completed the MIT, Marshall was promoted to be a front of the house manager at the Long Beach restaurant and was thereafter classified as an exempt employee and paid an annual salary of $37,000. As a front of the house manager, Marshall managed the front of the restaurant, supervising all the hosts, servers, bartenders, busboys, and food expeditors. On occasion, when Marshall was the only manager at the Long Beach restaurant, she would be in charge of running the entire restaurant. The Long Beach restaurant typically employed about 100 total nonexempt employees at any given time. Landry's expected front of the house managers to work between 55 and 60 hours each week.

In October 2004, Marshall requested that she be transferred to the Joe's Crab Shack restaurant in Oceanside (the Oceanside restaurant); Landry's granted Marshall's request. Marshall began working as a front of the house manager at the Oceanside restaurant on October 11, 2004 where she continued the duties she had performed at the Long Beach restaurant of supervising all hosts, servers, bartenders, bussers, and food expeditors and, often, supervised the entire restaurant. The Oceanside restaurant employed between 65 and 100 nonexempt employees.

Marshall acknowledged that "at all times during both the Long Beach and Oceanside restaurants' operating hours, she supervised and directed the work of at least two employees, and most of the time significantly more than two." Her resume states she "independently managed the entire store on most shifts."

Throughout Marshall's employment as a front of the house manager, Rio Gueli was the regional director for numerous Southern California Joe's Crab Shack restaurants, including both the Long Beach restaurant and the Oceanside restaurant.

3

From August until October 2004, Gueli worked with Marshall at the Long Beach restaurant and also personally observed Marshall working as a front of the house manager at both the Long Beach restaurant and the Oceanside restaurant. In February 2005, Marshall submitted her resignation. Marshall's final day of employment was March 6, 2005. Throughout the time she worked as a front of the house manager, her annual salary met the minimum salary requirement for the executive exception under the wage order.

PROCEDURAL BACKGROUND

In April 2017, Marshall filed a complaint against Landry's alleging that, while she was employed as a front of the house manager, Landry's misclassified her as an exempt employee. Marshall's complaint included four causes of action: (1) failure to pay overtime compensation; (2) violation of section 17200 of the Business and Professions Code; (3) failure to provide meal and rest periods; (4) waiting time penalties pursuant to Labor Code sections 201 through 203; and (5) failure to furnish wage and hour statements pursuant to Labor Code section 226.[2]

Following a bench trial in the instant case, the trial court announced its decision in a minute order dated July 27, 2018 which stated in part: "The court finds that [Marshall] was an exempt employee under the Labor Code. [Marshall] was trained as a manager and performed manager duties at both locations. The court finds her claims that she performed non-exempt work more than 50% of the time not credible. Importantly,

_____

[2] In the complaint, Marshall alleged that the statutes of limitations on her claims were tolled by the September 2007 filing of a putative class action entitled *Roberto Martinez v. Joe's Crab Shack*, case No. BC377269 (the *Martinez* case) in the Los Angeles Superior Court involving Joe's Crab Shack restaurants' managers. Class certification was denied twice in the *Martinez* case—once in May 2010 and again in May 2012. However, in 2015, the Court of Appeal overturned the denial of class certification and remanded to the trial court to reconsider class certification. On August 3, 2016, the trial court dismissed the *Martinez* case. Martinez appealed the dismissal. During the trial in this matter, the appeal in the *Martinez* case was still pending.

4

but not exclusively, she went through a management-in-training program with [Landry's] before she started her new duties, she performed manager duties, she published a resume stating she had been a manager at [Landry]'s restaurants, and the explanation of Rio Gueli as to the role and function of the manager, as well as his personal (but brief) observation of plaintiff while she performed her duties, was credible and compelling. [¶] [Marshall]'s claim in the Fifth Cause of Action for violation of Labor Code section 226 is denied on the ground it is barred by the statute of limitations. [¶] All other claims are denied. [¶] Pursuant to California Rules of Court, rule 3.1590(c)(3), the court orders the defendant to prepare a statement of decision and proposed judgment."

Landry's prepared a proposed statement of decision to which Marshall filed objections. Following a hearing, the trial court signed the statement of decision. As to the three controverted issues jointly presented by the parties at trial, as set forth in the statement of decision, the trial court found: (1) Marshall's fifth cause of action for failure to furnish wage and hour statements under Labor Code section 226 was barred by the one-year statute of limitations under Code of Civil Procedure section 340, subdivision (a); (2) Marshall's remaining claims were not time barred because the applicable statutes of limitations were tolled during the pendency of the *Martinez* case; and (3) Landry's properly classified Marshall as exempt under Wage Order No. 5 and Labor Code section 515.[3] Judgment, which incorporated the statement of decision, was entered in Landry's favor. Marshall appealed.

---

[3] Marshall does not challenge any of the trial court's findings on the statute of limitations issues in this appeal.

5

DISCUSSION

I.

APPLICABLE STANDARDS OF APPELLATE REVIEW IN CASES WHERE THE TRIAL COURT
HAS ISSUED A STATEMENT OF DECISION

Where the court issues a statement of decision, it need only recite ultimate facts supporting the judgment being entered. (Code Civ. Proc., § 632; *Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 274.) If a party fails to bring omissions or ambiguities in the statement of decision to the trial court's attention, we will infer the trial court made findings favorable to the prevailing party on all issues necessary to support the judgment, including the omitted or ambiguously resolved issues. (*Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.* (2015) 238 Cal.App.4th 468, 482; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59-60.) "We review the trial court's express factual findings, and any implied findings, for substantial evidence." (*Apex LLC v. Sharing World, Inc.* (2012) 206 Cal.App.4th 999, 1009.)

II.

SUMMARY OF THE EXECUTIVE EXEMPTION UNDER WAGE ORDER NO. 5

"'Under California law, employees are entitled to overtime pay for any work in excess of eight hours in one workday, or 40 hours in any one workweek, unless the employer affirmatively establishes that the employee qualifies for a statutory exemption.' [Citations.] Labor Code section 515, subdivision (a), authorizes the Industrial Welfare Commission (IWC) to establish exemptions from the overtime pay requirement for '"executive, administrative, and professional employees . . . primarily engaged in duties that meet the test of the exemption . . . [who] customarily and regularly exercise[] discretion and independent judgment in performing those duties . . . ."' [¶] Each of the 16 wage orders promulgated by the IWC to govern various industries or occupations contains an exemption for executive, administrative and professional

6

employees." (*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 373.) "The wage orders remain in effect alongside the body of law enacted by the Legislature and codified in the Labor Code; the two sources of authority establish complementary regulations governing wage and hour claims." (*Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 743.)

"'[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees.' [Citations.] To that end, we narrowly construe exemptions against the employer, 'and their application is limited to those employees plainly and unmistakably within their terms.' [Citations.] We employ these same principles to wage orders promulgated by the Industrial Welfare Commission (IWC)." (*Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 667.)

Wage Order No. 5 applies to restaurants as part of the "Public Housekeeping Industry" and requires employers to provide overtime pay to employees working more than eight hours in one day or 40 hours in one week (Cal. Code Regs., tit. 8, § 11050, subds. 2(P)(1), 3(A)(1)) unless an employee is employed in an administrative, executive, or professional capacity (*id.*, subd. 1(B)). "A person employed in an executive capacity means any employee: [¶] (a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and [¶] (b) Who customarily and regularly directs the work of two or more other employees therein; and [¶] (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and [¶] (d) Who customarily and regularly exercises discretion and independent judgment; and [¶] (e) Who is primarily engaged in duties which meet the test of the exemption." (*Id.*, subd. 1(B)(1)(a)-(e).) The term "'primarily'" means "more than one-half of the employee's work time." (*Id.*, subd. 2(O).)

## III.

### THE RECORD DOES NOT SHOW THE TRIAL COURT MISAPPLIED THE LAW.

In her opening brief, Marshall argues the trial court erred in rendering its decision following the bench trial by failing to apply the presumption that Marshall was a nonexempt employee until Landry's carried its burden of proving otherwise: "[T]he trial court did not find Marshall spent more than 50% of her time on exempt work. The trial court believed Marshall's claims that she performed non-exempt work more than 50% of the time not credible. [¶] At most, the trial court disregards Marshall's testimony but that does not shift the presumption. The trial court is still left with the presumption that she is non-exempt—a presumption that [Landry's] must overcome. The case law is clear on this point. [Landry's] bears the burden to prove Marshall is exempt not the other way around."

Marshall's argument that the trial court misapprehended the relevant legal standards and thus misapplied the burden of proof is undercut by the statement of decision itself in which the court repeatedly acknowledged that it is the employer's burden to prove the applicability of an exemption. For example, the statement of decision states: "The Court . . . finds that Defendant Landry's Inc., formerly known as Landry's Restaurant Inc., has met its burden and established that, while working at Joe's Crab Shack restaurants, Plaintiff Terri Marshall was correctly classified as an exempt employee pursuant to the Executive exemption set forth in Industrial Welfare Commission Wage Order 5-2001 and California Labor Code § 515."

The statement of decision also shows that the trial court, after finding Marshall's testimony not credible, found her to have been properly classified as exempt based on the evidence presented by Landry's, and not based on the dearth of evidence offered by Marshall on that point: "Here, the evidence presented by Landry's established that it realistically expected front of the house managers to spend more than 50% of their

8

time on exempt tasks.  The evidence also established that Marshall did spend more than 50% of her time on exempt tasks.  Marshall's testimony to the contrary was not credible."

Marshall argues the statement of decision is deficient because it fails to recite the legal principles that the exemption is narrowly construed and that the trial court must find its requirements plainly and unmistakably satisfied before finding the exemption applicable.  The trial court was not required to include a comprehensive statement of the applicable law in its statement of decision.  Our record shows the trial court was well aware of the cited legal principles and nothing supports Marshall's argument the trial court misunderstood or misapplied the law.[4]

IV.

SUBSTANTIAL EVIDENCE SUPPORTED THE TRIAL COURT'S FINDING THAT, AS A FRONT OF THE HOUSE MANAGER, MARSHALL WAS PRIMARILY ENGAGED IN EXEMPT WORK.

Marshall argues the trial court erred by finding she had been properly classified as exempt under Wage Order No. 5 because insufficient evidence showed that, during her tenure as a front of the house manager, she was primarily engaged in managerial duties within the meaning of the exemption.  We disagree.

In determining whether an employee is primarily engaged in exempt duties, Wage Order No. 5 provides:  "The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations [in effect as of January 1, 2001] under the Fair Labor Standards Act [of 1938 (29 U.S.C. § 201 et seq.) (FLSA), specifically, title 29 of the Code of Federal Regulations, former parts] 541.102, 541.104-111, and 541.115-116.  Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions.  The work

_____

[4]  The trial court's statement of decision exceeded the statutory requirement of reciting the ultimate facts.  The statement of decision also correctly stated the law; it does not contain any misstatement of law.  The trial court was not required to include governing legal principles in any greater detail.

9

actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, *together with the employer's realistic expectations and the realistic requirements of the job*, shall be considered in determining whether the employee satisfies this requirement." (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e), italics added.)

"The significance of the employer's realistic expectations and the realistic requirements of the job in evaluating whether an employee was properly classified as exempt from overtime pay requirements, as set forth in various IWC wage orders, including IWC wage order No. 5, was recognized nearly 20 years by the Supreme Court in *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 802." (*Martinez v. Landry's Restaurant's, Inc.* (2018) 26 Cal.App.5th 783, 797.)

In *Ramirez v. Yosemite Water Co., supra*, 20 Cal.4th at pages 801-802, the Supreme Court analyzed whether an employee was properly classified as exempt from overtime compensation under Industrial Welfare Commission Wage Order No. 7-2001 because he spent more than half of his time in outside sales: "Having recognized California's distinctive quantitative approach to determining which employees are outside salespersons, we must then address an issue implicitly raised by the parties that caused some confusion in the trial court and the Court of Appeal: Is the number of hours worked in sales-related activities to be determined by the number of hours that the employer, according to its job description or its estimate, claims the employee *should* be working in sales, or should it be determined by the actual average hours the employee spent on sales activity? The logic inherent in the IWC's quantitative definition of outside salesperson dictates that neither alternative would be wholly satisfactory. On the one hand, if hours worked on sales were determined through an employer's job description, then the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had little basis in reality. On the other hand, an employee who is supposed to be engaged in sales activities during most of his working

10

hours and falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption.  A trial court, in determining whether the employee is an outside salesperson, must steer clear of these two pitfalls by inquiring into the *realistic* requirements of the job.  In so doing, the court should consider, first and foremost, how the employee actually spends his or her time.  But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job."

As discussed *ante*, in the determination of what constitutes exempt and non-exempt work, Wage Order No. 5 incorporates by reference certain federal regulations for guidance, including former part 541.102, subdivision (b) of title 29 of the Code of Federal Regulations which provides:  "[I]t is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him:  Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property."

Citing evidence of the MIT Marshall completed, the front of the house manager job description, and Gueli's testimony regarding the role and function of a front of the house manager, the trial court found Landry's "realistically expected front of the

11

house managers, including Marshall, to spend more than fifty percent (50%) of [their] time performing exempt duties." Marshall does not challenge the court's finding regarding Landry's realistic expectations or the evidence cited in the statement of decision to support that finding.

Instead, Marshall's challenge that she was improperly classified as exempt is primarily focused on whether, as a front of the house manager, she *actually* spent more than 50 percent of her time on exempt activities. In the statement of decision, the trial court stated: "Landry's produced credible and compelling evidence establishing that Marshall spent more than fifty percent (50%) of her working time performing exempt tasks. During his testimony, Gueli provided a credible and compelling explanation of the role and function of the front of the house manager at Joe's Crab Shack. Gueli personally observed Marshall while she performed her duties as a front of the house manager at both the Long Beach and Oceanside locations.[5] Gueli testified that he worked out of the Long Beach restaurant four to six days a week from August to October 2004, the same period Marshall worked at Long Beach. During this period, Gueli testified that he observed Marshall performing her duties and responsibilities as a front of the house manager. Gueli testified that Marshall spent 60% to 90% of her time performing managerial duties, including but not limited to, interviewing, preparing schedules, maintaining and reviewing manager logs, delegating and overseeing the assignment and completion of the servers' 'side work,' assigning servers to sections within the restaurant, conducting table visits, running the floor, coaching, developing, and directing the work of the front of the house employees, controlling inventory, managing all front of the house

---

[5] Gueli remained Marshall's regional manager when she moved to the Oceanside restaurant where Marshall testified she performed "the same job" as she had at the Long Beach restaurant. The record is unclear whether there were instances Gueli was physically present at the Oceanside restaurant when Marshall was working. Whether substantial evidence supports the specific finding Gueli personally observed Marshall at the Oceanside restaurant does not affect our analysis.

12

employees' meal and rest periods, delegating tasks to employees, deciding when and which server to 'cut,' cashing out each server and auditing their sales, and preparing and reviewing closing reports, such as profit and loss reports, voids and comps reports and labor reports."

Marshall does not argue the statement of decision inaccurately summarizes Gueli's testimony describing the exempt duties of front of the house managers and stating that he observed Marshall spending at least 60 percent of her time engaged in exempt duties. She challenges Gueli's credibility citing, in particular, his inability to recall specifics regarding his observation of her performing exempt duties. It is the province of the trier of fact, however, to make credibility determinations. (See *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 ["In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of credibility are likewise within the province of the trier of fact"].)

Marshall next argues the evidence that she spent more than 50 percent of her time on nonexempt activities is insufficient because in his testimony "Gueli confirmed 1) he does not know how many hours per week she worked 2) he does not know what Marshall did when he was not present and 3) he could only talk about when he was present with her (which [Landry's] fails to establish in terms of hours and or days per week)." She also argues Landry's "presented no valid statistical model developed by experts"[6] to determine how she spent her time. Marshall does not cite any legal

---

[6] In her opening brief, Marshall cites *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 33 in support of her argument that "the trial court's decision is based on representative evidence of a small yet incomplete sample to extrapolate to the entire forty (40) week period." *Duran v. U.S. Bank National Assn.* is distinguishable as that case addressed the use of statistical evidence and the problem of a small sample size to prove class wide liability and damages.

13

authority, and we have found none, showing that detailed time records and expert testimony are required to prove an employee was primarily engaged in exempt work. While evidence of how many hours per week Marshall worked and detailed records of how Marshall spent her time during each shift would certainly be relevant to determining whether she primarily spent her time on exempt activities, the absence of such evidence does not compel the conclusion that requirement was unsatisfied.

Instead, in the absence of credible evidence that the amount of time Marshall spent performing exempt work significantly changed from those periods Gueli had personally observed her work, Gueli's testimony is sufficient to support the inference that at least 60 percent of her time was spent performing exempt work. In *Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440, 478-479, the appellate court similarly concluded: "Although the significant period for determining exempt status is the work week, and '"employees['] exempt or non-exempt status can vary on a week by week basis"' [citation], this rule in no way suggests that the trier of fact may not make reasonable inferences about a party's activities during the relevant period based on his or her activities in earlier and later periods, particularly where there is nothing to suggest the employee's duties and responsibilities changed significantly. [Citation.] Here, neither Batze nor Hayes testified that his responsibilities varied markedly from store to store or week to week, and Cesar affirmatively testified that his responsibilities did not. In short, the evidence amply supported the court's conclusion that in all their assignments, appellants' work was primarily managerial and thus exempt."

As discussed *ante*, *Ramirez v. Yosemite Water Co., supra*, 20 Cal.4th at page 802 confirmed that the primary duties determination is based on the combination of the employer's realistic expectations of how the employee should be spending her time (here, it was the trial court's uncontested finding Landry's realistically expected Marshall to spend more than 50 percent of her time on exempt work) and the amount of time the employee actually performed exempt work. The front of the house manager job

14

description and the substance of the MIT informed Marshall on how she was to spend her time as a front of the house manager. Although Gueli's testimony showed his direct observations of Marshall performing her job were brief and limited, he testified he observed Marshall to spend 60 to 90 percent of her time on exempt work which supported the inference Marshall demonstrated her understanding of Landry's expectations of how she was to perform her job. Marshall does not argue that her typical schedule of work functions widely varied from that which Gueli observed. The evidence was therefore sufficient to support the court's finding that during her tenure as a front of the house manager, Marshall was primarily engaged in exempt work within the meaning of Wage Order No. 5.

V.

MARSHALL'S OTHER CHALLENGES TO THE TRIAL COURT'S EXEMPTION FINDING ARE WITHOUT MERIT.

At the end of her opening brief, under a heading entitled "Respondent Failed to 'Plainly and Unmistakably' Establish that Marshall Met the Hire/Fire Prong, Independent Judgment and Discretion and Supervise Two or More Employees Prong," Marshall's entire argument on this broad subject is as follows: "The trial court seemed to focus on the primarily engaged (more than 50% on exempt duties) prong. No facts relating to these prongs in the July 27, 2018 Minute Order [citation]. [¶] As set forth in the Objections to the Statement of Decision, material facts relating to these prongs are not even discussed nor are substantial evidence and/or facts supporting a finding that these prongs were 'plainly and unmistakably' met. The inadequacies and shortcomings of the Statement of Decision to establish these prongs have been met as well are set forth in the Objection to the Statement of Decision, several of which are mentioned above."

Marshall has failed to cite any legal authority or provide any analysis to support her challenges to the cited findings by the trial court and has therefore forfeited those challenges on appeal. Even if Marshall has not forfeited her arguments, they are

without merit. Although the trial court was required to state its findings on ultimate facts, here, the statement of decision expressly states the court's findings on the identified sub-issues (in subheadings) and, although also not required, summarizes the evidence that supported those findings as set forth below.

A.

*Marshall Customarily and Regularly Directed the Work of
Two or More Employees.*

The statement of decision expressly states that the court found Marshall customarily and regularly directed the work of two or more employees, based on the following evidence: "As a front of the house manager, Gueli testified that Marshall customarily and regularly directed the work of two or more employees, including all hosts, servers, bartenders, food runners and breakers. Marshall's testimony also confirmed this point. She testified that at all times during both the Long Beach and Oceanside restaurants' operating hours, she supervised and directed the work of at least two employees, and most of the time significantly more than two. Marshall also testified that she was occasionally the only manager in the entire restaurant and, thus, supervised all front of the house and back of the house employees. Marshall's resume stated that she 'independently managed the entire store on most shifts.'"

B.

*Marshall's Suggestions and Recommendations Regarding Hiring, Firing, Advancement,
and Promotions for Employees Were Given Particular Weight.*

The statement of decision also states that the court found Marshall's suggestions and recommendations as to the hiring, firing, advancement, promotion, or other change of status of employees were given particular weight. The court explained: "Both Marshall's and Gueli's testimony support this element. Marshall testified that she was involved in employee interviews and made recommendations regarding certain employees moving on to a second interview and that she also had the authority to recommend employees for hire. Gueli testified that Marshall had the authority to

16

recommend employees for hire. Gueli also confirmed that based on the time period Marshall worked in the Long Beach restaurant, she would have been involved in hiring at least twenty (20) front of the house employees. Marshall also confirmed that her suggestions and recommendations for disciplining and firing employees were given weight. Marshall confirmed that she was involved in disciplining employees and was also involved in the decision to terminate at least one employee. Gueli testified that Marshall had the authority to discipline employees and recommend employees for termination. [¶] This point was also supported by the Manager in Training and Fundamentals of Management manuals that both Marshall and Gueli testified Marshall used during her training for the front of the house manager position. Both manuals identified 'interviewing' and 'hiring' as training topics. Joe's Crab Shack's Front of the House Manager job description, a copy of which is in the Manager in Training manual, also confirmed this point. [¶] Finally, Marshall's own resume stated that she, 'recruited, hired and trained' her hourly staff."

C.

*Marshall Customarily and Regularly Exercised Discretion and Independent Judgment.*

In addition, the statement of decision stated the court found Marshall to have customarily and regularly exercised discretion and independent judgment, explaining: "Gueli confirmed that from the moment managers walk into the restaurant until the moment they leave, they're 'empowered' to take any action necessary to take care of the restaurant. Both Marshall and Gueli testified that Marshall had discretion and independent judgment to decide how to handle customer complaints. Gueli testified that managers were 'empowered' to take any action necessary to ensure guests' satisfaction. This empowerment was significant because guest satisfaction was a large part of Joe's Crab Shack's culture. Marshall and Gueli also confirmed managers had the discretion and independent judgment to approve voids or comps. Gueli pointed out that the importance of having a manager approve a void or comp was two-fold: (1) to coach the

17

employee on what, if anything, went wrong; and (2) to ensure the server was not engaging in any fraudulent behavior. Marshall and Gueli also testified that the managers had the discretion and independent judgment to decide whether to call additional employees in for a particular shift, to authorize an employee to work overtime and/or miss a meal and/or rest period due to the needs of the restaurant, and to determine when to start sending employees home and who to send home. Marshall and Gueli testified that she had the discretion and independent judgment to exceed the restaurant's labor budget."

The statement of decision continued: "Gueli's testimony that, as a front of the house manager, Marshall customarily and regularly exercised discretion and independent judgment, was credible and compelling. Marshall's testimony that she did not have the discretion and independent judgment to run the restaurant was not credible. Moreover, the fact that Landry's had policies and procedures that Marshall was required to follow did not prevent or prohibit her from customarily or regularly exercising discretion and independent judgment. As the Court of Appeal has stated, even micromanaging does not eliminate the need for a person with common sense and leadership ability to exercise the discretion needed to make the store operate according to the employer's practices and procedures. [Citation.] Accordingly, even though Landry's had policies and procedures that Marshall was required to follow, the evidence established that Marshall customarily and regularly exercised discretion and independent judgment in the performance of her duties and responsibilities as a front of the house manager."

## D.

### *Conclusion*

Marshall does not argue the summaries of evidence contained in the statement of decision are inaccurate or otherwise challenge the evidence relied upon by the trial court in making its findings. The cited evidence is sufficient to support the

18

court's findings that Marshall customarily and regularly directed the work of two or more other employees, that Marshall's suggestions and recommendations as to the hiring, firing, advancement and promotion, or any other change of status of employees was given particular weight, and that Marshall customarily and regularly exercised discretion and independent judgment.


## DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

19